## DORMAN v. SOTO.

### No. 15,478; April 24, 1894.

#### 36 Pac. 588.

**Sale—Change of Possession—Attachment.**—Where plaintiff's son in law gave to her a bill of sale of articles on his ranch, which remained there and were used by him, there was no delivery and change of possession that would defeat an attachment of the property in an action against the son in law, though, with the bill of sale, there was given to plaintiff a deed of an undivided half of the ranch, and, before the attachment, plaintiff visited her son in law.

APPEAL from Superior Court, Contra Costa County; Joseph P. Jones, Judge.

Action by Asenath Dorman against Frank Soto. Judgment for plaintiff. Defendant appeals. Reversed.

R. H. Latimar and C. Y. Brown for appellant; W. S. Wells and Cary Howard for respondent.

VANCLIEF, C.—This action was brought to recover certain personal property (eight horses and forty tons of hay), or the value thereof. The defendant appeals from the judgment in favor of plaintiff, and from an order denying his motion for a new trial. The defendant, a constable, justifies the taking and detention of the property by virtue of a writ of attachment issued by a justice of the peace at suit of Williams against Thurber and wife, alleging that the horses and hay

were the property of Thurber and wife, and denying that plaintiff was the owner or entitled to the possession thereof. Plaintiff claimed title to the property by purchase from Thurber and wife, Thurber being her son in law. The purchase was evidenced by a bill of sale executed by the husband alone, as follows:

"Know all men by these presents: That for and in consideration of the sum of one dollar ($1) to me in hand paid, and other valuable consideration to me moving, I have this day sold, assigned, set over, transferred and delivered unto Asenath Dorman (widow), of Alameda county, state of California, the following described personal property, now in Contra Costa county, state of California, on the premises this day conveyed by myself and Ellen D. Thurber (my wife) to said Asenath Dorman, to wit: Eight work horses; all hay on said premises owned or belonging to me.

"Witness my hand this 20th day of August, 1892.

"A. S. THURBER.

"Witness: CARY HOWARD."

The appellant contends that there never was any delivery of the property described in the bill of sale, and consequently that the transfer was not followed by any actual change of possession, and is therefore void as against Williams, the attachment creditor; and I think this point is well taken. Since it appears that, at the time of execution of the bill of sale, Thurber and wife had the possession and control of the property, were then indebted to Williams, the plaintiff in the attachment suit, and that the attachment proceedings were regular, the burden of proving an immediate delivery, followed by an actual and continued change of possession of the property described in the bill of sale, devolved upon the plaintiff. Yet there is no evidence sufficiently tending to prove a delivery and continued change of possession to raise a substantial conflict with the evidence to the contrary. Indeed, it is neither alleged, nor found as a fact, that there was any delivery or change of possession. But conceding that an allegation and finding that plaintiff was the owner, and entitled to the possession, is sufficient to uphold the judgment, yet such finding is not justified by the bill of sale alone, which was executed in Oakland, Alameda county, while the property described therein was on Thurber's ranch, in Contra Costa

county. The plaintiff rested her case on the bill of sale and her own testimony. Her testimony in chief is as follows: "I am the plaintiff in the above-entitled action. This paper [paper shown witness] was delivered to me by A. S. Thurber on the twentieth day of August, 1892. It is a bill of sale for property contained in the complaint. I continued to be the owner of this property on the eighth day of September, 1892." Cross-examination: "I live in Oakland, and sometimes in Alameda. I have lived in Oakland for about the last six years continuously. My home has been with my daughter, Mrs. Soto, in Oakland; but since Mrs. Thurber has moved to Alameda, I have visited some at her house. I have lived with my daughter, Mrs. Soto, in Oakland, and stop sometimes with my daughter, Mrs. Thurber, wife of A. S. Thurber. The bill of sale was made and delivered to me on the twentieth day of August, 1892, at my daughter's home in Oakland, by A. S. Thurber. The consideration of this bill of sale was $20 in money, and, A. S. Thurber being my son in law, I went on his note for $5,000 to $6,000; and this transfer was to pay me for the $20 in money which I had already paid him, and which I may be called upon to pay out on any of the notes which I had indorsed for him. The horses and hay were on the ranch known as the 'Treat Ranch,' in Contra Costa county, state of California. At the time the bill of sale was made, I was very intimate with A. S. Thurber, he being my son in law. I visited at his home, and I was getting uneasy about his affairs—whether his fruit crop would be sufficient to pay off his indebtedness and the notes I went security for, so I would be released—and he was getting uneasy about not being able to pay off his debts, and about being able to release me; and I wanted a bill of sale of his personal property, because I thought I might have to pay these notes I went security for him. This stock was kept on the ranch continuously, and is there yet. I went to the Thurber ranch a few days after the receipt of the bill of sale from Thurber to me, and stayed there until about November 13, 1892, when I left on business. I stayed there until I came down to Martinez to pay my taxes; and the sheriff met me down there, and served a summons on me in the Treat suit. Then I went to Oakland to hunt me a lawyer, to know what to do. Then I caught cold, and was detained in Oakland. I put my son, Charles Dunn, in charge

of the property for me, when I received the bill of sale, and he stayed there all the time. I went to the ranch soon after the bill of sale was made, and stayed there until November. Mr. and Mrs. Thurber remained also until I left, about the thirteenth day of November, 1892, when they moved to Alameda." The testimony on the part of the defendant showed that Thurber used the property on his ranch after the execution of the sale, continuously, until it was attached, as he had used it before. The plaintiff, in rebuttal, testified: "I sent this paper to my son Charles Dunn about the time I bought the property from Thurber.

" 'Oakland, Cal., August 20, 1892.
" 'Chas. Dunn, Esq., Concord, Cal.—

" 'Dear Sir: You are hereby requested and directed to take possession of the land and premises next formerly owned by Alfred S. Thurber and wife, near Concord, with all personal property thereon, owned or claimed by them, or either of them, except wearing apparel and household furniture, and the same to hold, as my agent, and subject only to my orders and control.                    Yours truly,
" '.ASENATH DORMAN.' "

Charles Dunn, having been called as a witness for defendant, testified: "I lived during the year and fall of 1892 on the Treat ranch. Thurber and wife lived there also. ["Treat Ranch" being the name of the ranch owned by Thurber and wife.] I claimed an undivided one-half of the hay Soto attached, . . . . and served notice on Soto, the constable. The other half belonged to Mrs. Thurber, wife of A. S. Thurber. . . . . The share of Mrs. Thurber was hauled away in November, 1892." Being called by plaintiff in rebuttal, Charles Dunn testified that his mother's letter to him of August 20, 1892, was given to him by Mr. A. S. Thurber a few days after its date; but he did not testify that he took possession or charge of the property for the plaintiff, or that he did anything directed by that letter, nor is there any evidence that he did. On what ground he claimed one-half of the hay at the time of the levy does not appear, nor why, if the other half belonged to Mrs. Thurber, as he testified it did, her half was not subject to the attachment. Plaintiff, also, in rebuttal, introduced a deed to her from Thurber and wife for one-half of the Treat ranch, undivided, which appeared to have been

recorded August 22, 1892; and it is claimed by appellee that this deed was sufficient evidence of a delivery and continuous possession of the horses and hay described in the bill of sale, as they were on the ranch from the date of the bill of sale until they were attached. But this contention is answered by several cases in this state: Cahoon v. Marshall, 25 Cal. 197; Bunting v. Saltz, 84 Cal. 168, 24 Pac. 167. I think the judgment and order should be reversed and a new trial granted.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.